Filed 3/14/2022 9:52 PM
Lori Caraway
District Clerk
Bowie County, Texas
Stephanie Wetherington, Deputy

22C0278-005

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| SHANITA DENISE WOMACK, NIKITA GOFFNEY SR., individually and as representative of THE ESTATE OF NIKITA VAN GOFFNEY JR.<br><br>Plaintiffs.<br><br>vs.<br><br>DAVID J. BAKER individually, and in his official capacity; LINDA K. ARNOLD individually, and in her official capacity; JAIME L. MARTIN; LESLIE P. PICKENS individually, and in her official capacity; BARRON S. DICKINSON individually, and in his official capacity; VEVA E. WATSON, individually, and in her official capacity. BRYAN COLLIER individually, and in his official capacity; BOBBY LUMPKIN individually, and in his official capacity; ERIC GUERRO individually, and in his official capacity; CARL MONROE individually, and in his official capacity; MICHAEL BRITT individually, and in his official capacity; CRIS LOVE individually, and in his official capacity; CYNTHIA JUMPER individually, and in her official capacity; DENISE DESHIELDS individually, and in her official capacity; WILL RODRIGUEZ individually, and in his official capacity; OWEN MURRAY individually, and in his official capacity; JOSEPH PENN individually, and in his official capacity.<br>Defendants. | §§§§§§§§§§§§§§§§§§§§§§§ IN THE CIVIL DISTRICT COURT<br><br>_____ JUDICIAL DISTRICT<br><br><br>BOWIE COUNTY, TX |

1

## ORIGINAL PETITION

Plaintiff, SHANITA DENISE WOMACK , NIKITA GOFFNEY SR. individually, and as the heir and representative of THE ESTATE OF NIKITA VAN GOFFNEY JR. (formerly Texas Department of Criminal Justice inmate number 01775566), by and through the undersigned attorney, and brings this lawsuit against Defendants because they caused the needless death of NIKITA VAN GOFFNEY while he was incarcerated and under their direct control at the Texas Department of Criminal Justice "TDCJ" Telford Unit in New Boston, Texas.

### Statement of Claims

1. Plaintiff Nikita Goffney Sr. individually, and as the heir and representative of the Estate of Nikita Van Goffney (formerly Inmate Number 01775566) brings this civil action for compensatory and punitive damages against Defendants BAKER, ARNOLD, MARTIN, PICKENS, DICKINSON, WATSON, COLLIER, LUMPKIN, GUERRO, MONROE, BRITT, LOVE, JUMPER, DESHIELDS, RODRIGUEZ, MURRAY, and PENN in their individual and official capacities, for violating his civil rights under the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. 12132, 42 U.S.C. 12101, and 29 U.S.C. 794.

### Jurisdiction

2. This Court has federal jurisdiction pursuant to 28. U.S.C. 1331 (federal question), 1343 (civil rights), 42 U.S.C. 1983 and 1988, and the Eighth and Fourteenth Amendments to the United States Constitution. This Court has supplemental jurisdiction pursuant to 28 U.S.C. 1367(a).

## Venue

3. This Court has supplemental jurisdiction over Plaintiffs' federal claims, under 28 U.S.C.1331 and 2201, 42 U.S.C 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and supplemental jurisdiction under 28 U.S.C.1367(a), to hear Plaintiffs' state law claims if any.
4. Venue is proper in this Court under 28 U.S.C.1391(b) because the incidents at issue took place in Bowie County, Texas, within the United States Eastern District of Texas. This suit arises from the excessive use of force and wrongful arrest by Reyes against Shaun.

## Parties

**PLAINTIFFS**

5. Plaintiff, NIKITA VAN GOFFNEY SR. is the decedent's father and a surviving heir of Nikita Van Goffney Jr. He sues in his individual capacity and as an heir-at-law to Nikita Van Goffney Jr. 's estate and as a statutory beneficiary under the Texas Wrongful Death Act. Nikita Van Goffney Jr. died intestate, and there were no probate proceedings arising from his death, as none were necessary. He is a resident of Harris County, Texas.

6. Plaintiff, SHANITA DENISE WOMACK, is the decedent's mother and a surviving heir of Nikita Van Goffney Jr. She sues in her individual capacity and as an heir-at-law to Nikita Van Goffney Jr.'s estate and as a statutory beneficiary under the Texas Wrongful Death Act. Nikita Van Goffney Jr. died intestate, and there were no probate proceedings arising from his death, as none were necessary. She is a resident of Montgomery County, Texas.

**DEFENDANTS**

7. DAVID J. BAKER, PhD, was a Mental Health Counselor at the Connally Unit at all relevant times and acting under color of law and as the agent, and, as a matter of law, the official representative of TDCJ and UTMB. He is sued in his individual capacity for punitive and compensatory damages. He can be served at University of Texas Medical Branch, 301 University Blvd., Galveston, TX 77555 or wherever he may be found.

8. LINDA K. ARNOLD was a Licensed Vocational Nurse at the Telford Unit at all relevant times and acting under color of law and as the agent, and, as

a matter of law, the official representative of TDCJ and TTUHSC. He is sued in his individual capacity for punitive and compensatory damages. He can be served at Texas Tech University Health Sciences Center - 3601 4th Street, Lubbock, TX 79430 or wherever he may be found.

9. JAIME L. MARTIN was a Nurse Practitioner at the Telford Unit at all relevant times and acting under color of law and as the agent, and, as a matter of law, the official representative of TDCJ and TTUHSC. He is sued in his individual capacity for punitive and compensatory damages. He can be served at Texas Tech University Health Sciences Center - 3601 4th Street, Lubbock, TX 79430 or wherever he may be found.

10. LESLIE P. PICKENS was a Registered Nurse at the Telford Unit at all relevant times and acting under color of law and as the agent, and, as a matter of law, the official representative of TDCJ and TTUHSC. He is sued in his individual capacity for punitive and compensatory damages. He can be served at Texas Tech University Health Sciences Center - 3601 4th Street, Lubbock, TX 79430 or wherever he may be found.

11. BARRON S. DICKINSON was a Licensed Vocational Nurse at the Telford Unit at all relevant times and acting under color of law and as the agent, and, as a matter of law, the official representative of TDCJ and TTUHSC. He is sued in his individual capacity for punitive and compensatory damages. He can be served at Texas Tech University Health Sciences Center - 3601 4th Street, Lubbock, TX 79430 or wherever he may be found.

12. VEVA E. WATSON was a Licensed Vocational Nurse at the Telford Unit at all relevant times and acting under color of law and as the agent, and, as a matter of law, the official representative of TDCJ and TTUHSC. He is sued in his individual capacity for punitive and compensatory damages. He can be served at Texas Tech University Health Sciences Center - 3601 4th Street, Lubbock, TX 79430 or wherever he may be found.

13. BRYAN COLLIER is the Executive Director of TDCJ. As such, Collier is the commanding officer of all TDCJ correctional officers, guards, and TDCJ employees and contractors, and is responsible for their training, supervision, and conduct. By law, he is responsible for protecting the constitutional rights of all persons held in TDCJ custody. At all relevant times, Collier was acting under color of law and as the agent, and, as a matter of law, an official representative of TDCJ. He is sued in his individual capacity for punitive and compensatory damages. Collier is a

resident of Huntsville, Texas, in Walker County. He can be served process at 861-B, IH-45 North, Huntsville, TX 77320 or wherever he may be found.

14. BOBBY LUMPKIN is the Director of TDCJ's Correctional Institutions Division. As such, Lumpkin is responsible for providing safe and appropriate confinement, supervision, rehabilitation, and reintegration of adult felons, and to effectively manage or administer correctional facilities based on constitutional and statutory standards. Director Lumpkin is obligated to improve public safety by providing effective interventions through a safe, secure, and positive environment empowering individuals to achieve life-long success. Director is also obligated to protect the interests of the state of Texas when contracting with outside vendors and representatives through effective management, monitoring, and on-going communication between the TDCJ and its contracted representatives. At all relevant times, Lumpkin was acting under color of law and as the agent, and, as a matter of law, an official representative of TDCJ. He is sued in his individual capacity for punitive and compensatory damages. Lumpkin is a resident of Huntsville, Texas, in Walker County. He can be served process at 861-B, IH-45 North, Huntsville, TX 77320 or wherever he may be found.

15. ERIC GUERRERO is the Deputy Director of the Correctional Institutions Division for TDCJ Region 2, wherein sits the Telford Unit. The Correctional Institutions Divisions is responsible for the confinement of adult felony and state jail felony inmates who are sentenced to incarceration in a secure facility. The CID oversees state prisons, psychiatric facilities, Developmentally Disabled Offender Program, medical facilities, and substance abuse felony punishment facilities (SAFPF). At all relevant times, Martinez was acting under color of law and as the agent, and, as a matter of law, the official representative of TDCJ. He is sued in his individual capacity for punitive and compensatory damages. Martinez is a resident of Texas. He can be served process at 861-B, IH-45 North, Huntsville, TX 77320 or wherever he may be found.

16. CAROL MONROE is the Regional Director for TDCJ's Region II. As Regional Director Monroe's position involves establishing goals and objectives; developing guidelines, procedures, rules, and regulations; developing schedules, priorities, and standards for achieving established goals; coordinating and evaluating program activities; developing and evaluating budget requests; monitoring budget expenditures; and planning, assigning, and supervising the work of others. At all relevant times, Monroe

was acting under color of law and as the agent, and, as a matter of law, an official representative of TDCJ. He is sued in his individual capacity for punitive and compensatory damages. Monroe is a resident of Texas. He can be served process at 861-B, IH-45 North, Huntsville, TX 77320 or wherever he may be found.

17. MICHAEL BRITT was the Warden at the Telford Unit when Nikita died, and at all relevant times was acting under color of law and as the agent, and, as a matter of law, an official representative of the TDCJ, Britt acted to conceal the unconstitutional conduct against Mr. Goffney. As warden, Britt was obligated to perform advanced managerial correctional and criminal justice administration work at the Telford unit. Warden Britt's duties involved managing and overseeing correctional facilities; administering policies and procedures; directing security, housing, and facility operations; and supervising the work of others. Wardens work under minimal supervision with considerable latitude for the use of initiative and independent judgment. TDCJ wardens are obligated to ensure that policies, procedures, rules, and regulations are enforced. Further, TDCJ wardens direct the preparation and documentation of work assignments, classification committee, rehabilitative records, and reports on inmates, and are policymakers for their units. Britt is sued in his individual capacity for punitive and compensatory damages. He can be served process at 861-B, IH-45 North, Huntsville, TX 77320 or wherever he may be found.

18. CRIS LOVE was head of the Office of Inspector General ("OIG") for TDCJ when Mr. Goffney committed suicide, and at all relevant times was acting under color of law and as the agent, and, as a matter of law, an official representative of the TDCJ. As OIG, Love was obligated to investigate to ensure enforcement of various laws and regulations, as well as monitor investigative and audit techniques, and regulations in order to make recommendations of appropriate action to the TBCJ. All other legitimate matters are also investigated as requested or directed by the Board or by the laws of the State of Texas. Love is sued in his individual capacity for punitive and compensatory damages. He can be served process at 861-B, IH-45 North, Huntsville, TX 77320 or wherever he may be found.

19. CYNTHIA JUMPER was the Vice President of Health Policy and Special Health Initiatives for Texas Tech University Health Science Center ("TTUHSC") at the time Nikita died, and at all relevant times was acting under color of law and as the agent, and, as a matter of law, an official representative of the TTUHSC. As such, she is responsible for ensuring that

TTUHSC staff are properly trained and educated in effectively helping inmates experiencing a mental health crisis. She is also responsible for training and educating medical staff on how to properly identify and report correctional staff illegal use of excessive force.  Jumper is sued in her individual capacity for punitive and compensatory damages. She can be served at Texas Tech University Health Sciences Center - 3601 4th Street, Lubbock, TX 79430  or wherever she may be found.

20. DENISE DESHIELDS was the Executive Medical Director of Managed Care for Texas Tech University Health Science Center ("TTUHSC") at the time Nikita died, and at all relevant times was acting under color of law and as the agent, and, as a matter of law, an official representative of the TTUHSC. As such, she is responsible for ensuring that TTUHSC staff are properly trained and educated in effectively helping inmates experiencing a mental health crisis. She is also responsible for training and educating medical staff on how to properly identify and report correctional staff illegal use of excessive force.  DeShields is sued in her individual capacity for punitive and compensatory damages. She can be served at Texas Tech University Health Sciences Center - 3601 4th Street, Lubbock, TX 79430  or wherever she may be found.

21. WILL RODRIGUEZ was the Executive Director for Texas Tech University Health Science Center ("TTUHSC") at the time Nikita died, and at all relevant times was acting under color of law and as the agent, and, as a matter of law, an official representative of the TTUHSC. As such, he is responsible for ensuring that TTUHSC staff are properly trained and educated in effectively helping inmates experiencing a mental health crisis. He is also responsible for training and educating medical staff on how to properly identify and report correctional staff illegal use of excessive force.  Rodriguez is sued in his individual capacity for punitive and compensatory damages. He can be served at Texas Tech University Health Sciences Center - 3601 4th Street, Lubbock, TX 79430  or wherever she may be found.

22. OWEN MURRAY was the Chief Physician Executive for The University of Texas Medical Branch Correctional Managed Care program ("UTMB-CMC") at the time Nikita died, and at all relevant times was acting under color of law and as the agent, and, as a matter of law, an official representative of the UTMB. In his role, he is responsible, along with his colleagues, for program development, quality assurance, outcomes management, formulary and disease management guideline development, utilization review, risk management, offender correspondence, peer review, CME and staff development, litigation coordination, facility financial

management, and business development. Murray is sued in his individual capacity for punitive and compensatory damages. He can be served at 301 University Blvd., Galveston, TX 77555-1206, or wherever she may be found.

23. JOSEPH PENN was the Director of Mental Health Services for The University of Texas Medical Branch Correctional Managed Care program ("UTMB-CMC") at the time Nikita died, and at all relevant times was acting under color of law and as the agent, and, as a matter of law, an official representative of the UTMB. In his role, he is responsible for mental health: program development, quality assurance, outcomes management, formulary and disease management guideline development, utilization review, risk management, offender correspondence, peer review, CME, and staff development. Penn is sued in his individual capacity for punitive and compensatory damages. He can be served at 301 University Blvd., Galveston, TX 77555-1206, or wherever she may be found.

24. The Texas Department of Criminal Justice is the state prison system, an agency of the State of Texas. TDCJ's high-ranking policymakers reside in Huntsville. At all relevant times, it operated the Telford Unit, a public facility with programs and services for which the deceased and other prisoners with disabilities were otherwise qualified. TDCJ is a recipient of federal funds. TDCJ is sued for injunctive, declaratory, and compensatory relief, under federal law. It can be served process by serving Bryan Collier, its executive director, at 861-B, IH-45 North, Huntsville, TX 77320. He can be served wherever he may be found.

25. Texas Tech University Health Science Center ("TTUHSC"), located in Lubbock, is a component of the Texas Tech University system. Texas Tech University Health Science Center's high-ranking policymakers, including Will Rodriguez, reside and work in Lubbock. Through its Correctional Managed Care Program, TTU partners with TDCJ to provide health care to thousands of TDCJ prisoners, including prisoners at the Telford Unit. TTU is a recipient of federal funds, and is sued for declaratory, and compensatory relief under federal law. It can be served process by serving its Executive Director, Will Rodriguez, at 3601 4th Street, Lubbock, TX 79430. He can be served wherever he may be found.

26. University of Texas Medical Branch ("UTMB"), located in Galveston, is a part of the University of Texas system and also part of the Texas Medical Center. UTMB's high-ranking policymakers, including Owen Murray reside and work in Galveston. Through its Correctional Managed Care Program, UTMB partners with TDCJ to provide health care to thousands of

TDCJ prisoners, including prisoners at the Connally Unit. UTMB is a recipient of federal funds, and is sued for declaratory, and compensatory relief under federal law. It can be served process by serving its Vice President, Owen Murray, at 301 University Blvd., Galveston, TX 77555 - or wherever he may be found.

## Factual Allegations

27. Nikita Van Goffney was first taken into Texas Department of Criminal Justice, hereinafter, TDCJ, custody on April 12, 2012. His assigned TDCJ number was #01775566.

28. Throughout his incarceration, Nikita increasingly dealt with severe depression, substance abuse, auditory hallucinations, and living in a suicidal state. This history was well documented and accessible to all of the staff responsible for his incarceration and mental health treatment.

## TORRES UNIT

29. On April 26, 2012, Nikita made his first attempt to get serious mental health treatment from TDCJ staff. He reported feeling suicidal and being depressed.

30. Three days later, and on his own fruition, Nikita walked into Mental Health Outpatient Services and stated that he was in need of serious help because he was feeling overwhelmingly stressed and without family support or contact.

## CONNALLY UNIT

31. On August 25, 2017, Nikita made his third attempt to get the mental health treatment he needed by threatening to kill himself, the severity of which is evident in Dr. Baker's reports, "I want to die with my granny. She said she is tired. I'm tired too. She said she is going to die. I want to go, to die. Pt would consider no alternative to self-harm." In his clinical opinion, Baker reported that Nikita was a moderate-imminent risk for a potentially lethal suicide attempt. Protectively, Baker ordered that Nikita be placed in a suicide blanket to prevent or greatly reduce Nikita's opportunity to commit suicide. This marked the beginning of an ongoing and contentious relationship between Goffney and Baker.

32. On December 30, 2019, Nikita made his fourth attempt to get help and his first suicidal gesture. He was spotted by security with a noose around his neck, and later reported to staff that, "officers put [pulled] me over last night and I don't know why. They gassed me. I'm suicidal bc I hear voices from the spirits of my dead family members telling me to join them. I have had these voices for 3 yrs." Nikita explained that "I obey their commands, I need you to help me."

33. In a deliberate and illegal attempt to act as a correctional officer, Baker contradicted his own personal knowledge of Nikita's ongoing history of being suicidal by noting that Nikita was, "Demanding and disingenuous. Patient seeking secondary gain of avoiding disciplinary action for probably drug disciplinary. Risk level low." He furthered this sentiment by adding, "After the interview, I conferred with attending Sgt. Who informed me that pt had been caught with 2 or 3 fingers of k2 and that an investigation is ongoing? Given pt's future-orientation (wanting amenities, desire for a transfer) and likely motivation to avoid a disciplinary case for drug possession and trafficking, he was discharged from security watch."

34. In response to Nikita's being found with a noose around his neck, Baker finished his treatment by recommending that Nikita be removed from the transfer list to Crisis Management, and merely be followed up with by a qualified mental health professional. This insidious decision by Baker, derailed the imminent, serious, and life-saving treatment offered by Crisis Management which could have prevented Nikita's approaching suicide less than four months later.

35. Two days later, on January 1, 2020, Nikita made his fifth attempt to have his mental health needs taken seriously by attempting to overdose of pills, which were later lavage by correctional staff. Immediately afterwards, Goffney was seen by twelve staff members, and when asked about his current symptoms stated, "I've been feeling like this, and I feel like I can't get no help". Nikita informed the nurses that he talked to psych, but stated, "they don't listen to me, and I want to see someone else, but they don't let me."

36. On the morning of January 2, 2020, Dr. Baker conducted a Behavioral Health Pending Transfer Assessment and Restrictive Housing Assessment of Nikita to determine if he needed to be admitted to Crisis Management. Based on Baker's dismissive attitude in past encounters, Nikita stated, "I already saw you. You don't give me no help."

37. In deliberate indifference towards Nikita's worsening mental health condition, Baker took these assessments as opportunities to interrogate Goffney over his disciplinary issues opposed to his two suicidal gestures in less than seventy-two hours. Baker wrote that Goffney admitted to being suicidal, but highlighted that, "I reviewed previous session with pt, inquiring as to why he did not mention reason security transferred him (he was caught with k2 in his possession)." Baker totally ignored obvious signs of serious mental illness by documenting that Nikita did not exhibit any evidence of depression, anxiety, or a credible suicide plan. Baker continued, "Given patient's future orientation (wanting a transfer to inpatient services) and probable motivation to avoid an upcoming investigation/disciplinary case for drug possession and trafficking, he was discharged from security watch..." Despite acknowledging this as Goffney's third suicidal gesture, Baker indifferently refused to place him in Crisis Management; or place him in a suicide vest; or even assign him to a mental health caseload; instead, Nikita was returned to administrative segregation, all so known as, "The Hole." Baker defiantly refused to utilize any of various suicide prevention procedures required by TDCJ in such situations.

38. On January 7, 2020, Nikita put in a Sick Call Request because he was feeling suicidal and had been feeling this way since 2015. Hours later, Dr. Baker responded to Goffney's request, and noted, "patient refused interview but denied suicidal ideas." At various points in the assessments Baker repeated that Nikita was not a danger to himself and did not have any current mental health needs.

39. A 30-day follow up was conducted on January 31, 2020, in which Goffney denied having any current mental health needs. Staff set a 90-day follow up to be done on April 29, 2020.

**BETO UNIT**

40. On February 23, 2020, Nikita reported to mental health staff that, "I smoked k-2 eight or nine days ago, and I think something 'exploded' in my head." This was his sixth attempt to get mental health help from TDCJ staff.

**TELFORD UNIT**

41. On or about February 24, 2020, Nikita arrived at the Telford Unit, and staff conducted a series of standard intake, transfer, and restrictive housing screenings. Despite Nikita's extensive and well-documented history of

11

being depressed and suicidal, Licensed Vocational Nurse LINDA K. ARNOLD and Nurse Practitioner JAIME L. MARTIN completely failed Nikita by commentating that he had no current mental health needs, nor prior suicide attempts.

42. Ten days later on March 3, 2020, the Telford staff took first notice of Nikita's suicidal history and current mental health needs. To Nikita's demise, staff again downplayed the seriousness of the situation by documenting his mental health needs as "non-urgent."

43. After nearly two full weeks of yelling suicidal threats and strange ideations to anyone within earshot of his cell, Nikita had received absolutely no mental health attention. His only medical visit came from a Registered Dental Hygienist who noted that Nikita refused his self-requested appointment to have his teeth cleaned at 9:09am on March 16, 2020.

44. For the next five and half hours, all of the correctional and health care staff in Nikita's housing area, namely, Registered Nurse LESLIE P. PICKENS, Licensed Vocational Nurse BARRON S. DICKINSON, and Licensed Vocational Nurse VEVA E. WATSON, cruelly ignored his cries for help, making them fully aware that he would engage in self harm. As a result of their indifference and failure to follow the least demanding suicide prevention protocol, the 25-year-old young man was found in his single-man cell hanging from his bedsheet at 2:20pm on March 16, 2020.

45. In the first nine months of 2020 alone, this same deliberate indifference towards overtly suicidal inmates resulted in the death of four inmates who committed suicide by hanging. Further, since 2017 nine inmates have committed suicide by hanging themselves after showing a strong likelihood of self-harm.

**Count I**
**Federal Civil Rights Claim Under**
**42 U.S.C. 1983 for Violation of the**
**Eighth and Fourteenth Amendments**

46. Defendants BAKER, ARNOLD, MARTIN, PICKENS, DICKINSON, and WATSON were aware of the serious risk that Nikita would commit suicide and failed to take reasonable and basic steps to prevent his death. This deliberate indifference towards Nikita's mental health needs was an unconstitutional denial of his right to be free from cruel and unusual punishment protected by the Eighth Amendment. The manner in which

12

these health care providers ignored the serious risk of Nikita's suicidal history, and immediate cries for help amounted to the creation of an inhumane set of prison conditions, that eventually caused his early death at only 25 years old.

47. Plaintiff claims damages for the wrongful death of Nikita Van Goffney Jr. and for his loss of income, services, companionship, and for funeral and burial expenses under 42 U.S.C. 1983.

48. Defendants Collier, Lumpkin, Guerrero, Monroe, Britt, and Love caused the constitutional violations by reason of their deliberately indifferent practice and custom of failing to properly train, supervise and discipline correctional and investigative officers in the detecting, reporting, and protecting suicidal inmates from themselves.

49. Defendants Jumper, DeSheilds, Rodriguez, Murray, and Penn caused the constitutional violations by reason of their deliberately indifferent practice and custom of failing to properly train, supervise or discipline medical and mental health providers in the detecting, reporting, and protecting suicidal inmates from themselves, and based on their actions in ratification of the acts of the subordinates.

50. Nikita serious medical need, mental health-suicidal tendencies, was treated with deliberate indifference in violation the Eighth Amendment. Jail officials have a duty under the Eighth Amendment to take reasonable measures to guarantee the safety of the inmates.

51. Inmate suicide implicates both the state's duty to provide medical care and its duty to provide protection from harm, albeit self-inflicted duties denied to Nikita.

52. The defendants knew there was a strong likelihood Nakita would self-harm.

53. Defendants breached their duty to seek out the appropriate psychiatric and medical care for a suicidal inmate.

54. They were aware of the strong likelihood of suicide on the date he died.

55. The Defendants deprived plaintiffs of their 14th amendment right to familial relationships, and due process, and loss of consortium.

**Count II**

### Federal Civil Rights Violations Under
### 42 U.S.C. 12132, 42 U.S.C. 12101, and 29 U.S.C. 794

56. Defendants BAKER, ARNOLD, MARTIN, PICKENS, DICKINSON, and WATSON discriminated against Nikita because of his known disabilities: life threatening mental illness and addiction to synthetic marijuana (hereinafter referred to as "K2"), when they denied him the benefits of the services, programs and activities to which he was entitled as a person with a mental health disability, including but not limited to the right to be free of discriminatory or disparate treatment by virtue of his mental disability and addiction, and to due process of the law. As a result, plaintiff's decedent suffered harm in violation of his rights under the laws and Constitution of the United States, 42 U.S.C. 12132, 42 U.S.C. 12101, and 29 U.S.C. 794.

57. Defendants failed to comply with the mandates of 42 U.S.C. 12132, 42 U.S.C. 12101, and 29 U.S.C. 794 in the following areas:

    a. The failure to properly train, supervise and discipline corrections officers regarding crisis intervention techniques for individuals who exhibit the signs and symptom of mental disabilities;

    b. The failure to provide adequate training and resources for crisis intervention teams of corrections officers and others to respond to emergencies involving persons with mental health disabilities;

    c. The failure of correctional officers to follow established policies, procedures, directives, and instructions regarding crisis intervention techniques for individuals who exhibit the signs and symptoms of mental health disabilities.

58. By these actions, defendants have deprived plaintiff's descendants of rights secured by the United States Constitution, 42 U.S.C. 12132, 42 U.S.C. 12101, and 29 U.S.C. 794.

### Relief

Plaintiff prays that he has a judgment against Defendants for actual damages shown and proven at trial, for prejudgment, post-judgment interest, for costs of court, and all other relief, legal and equitable, to which he is entitled.
Wherefore, Plaintiff requests this Court to Order:

1. Compensatory damages;

2. Past pain and suffering

3. Punitive damages against the individual defendants;

4. Attorney's fees and costs pursuant to 42 USC Sec.1988;

5. All other appropriate relief.

Plaintiff hereby demands a jury trial.

>   Respectfully submitted,
>   By: /s/Terry Henderson Peden
>   TERRY HENDERSON  PEDEN
>   ATTORNEY FOR THE DEFENDANT
>   TX Bar Card No.: 24123963
>   The Law Group of THP, PLLC.
>   P.O. Box 1410
>   Houston, Texas 77251
>   Phone: 334-544-9471
>   Fax: +1334-460-9844
>   Email: THP@thelawgroupofTHP.com
>   Lead Counsel for Plaintiff
>
>   By: /s/ U.A. Lewis
>   U.A. Lewis
>   Texas State Bar No. 24076511
>   Federal Bar Number
>   The Lewis Law Group
>   P.O. Box 27353
>   Houston, TX 77227
>   T: (713) 570-6555
>   F: (713) 581-1017
>   myattorneyatlaw@gmail.com

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

U.A. Lewis on behalf of U.A. Lewis
Bar No. 24076511
myattorneyatlaw@gmail.com
Envelope ID: 62600971
Status as of 3/15/2022 9:36 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| U.A. LEWIS | | MYATTORNEYATLAW@GMAIL.COM | 3/14/2022 9:52:08 PM | SENT |